IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARA ANN L. B., | ) |
|     Plaintiff, | ) No. 24 C 8151 |
| v. | ) Magistrate Judge M. David Weisman |
| MICHELLE KING, | ) |
| Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Sara Ann L. B. appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**Background**

On February 10, 2022, plaintiff applied for benefits, alleging a disability onset date of August 2, 2021. (R. 113.) Her application was denied initially, on reconsideration, and after a hearing. (R. 14-35, 119, 126.) Plaintiff appealed to the Appeals Council, which declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 1, 2022, the amended alleged onset date. (R. 20.) At step two, the ALJ found that plaintiff has the severe impairments of "degenerative disease, lumbar spine; degenerative joint disease, bilateral knees; neurogenic bladder; and obesity." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (R. 23.) At step four, the ALJ found that plaintiff has the RFC to perform her past relevant work as a package sorter, and thus she is not disabled. (R. 24-28.)

Plaintiff contends that the ALJ impermissibly failed to tether the RFC to medical evidence. The ALJ said:

> An individual performing light work is generally limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. The claimant testified that she could lift less than five pounds, but the available treatment evidence did not support her allegation. However, giving her the benefit of the doubt and assuming that the

2

stress of lifting in general caused increased pain in her knees it was reasonable to restrict the claimant to light exertional work. The claimant testified she could not stand for even 10 minutes nor sit for more than six to seven minutes. She testified to using a cane and in her Function Report indicated that she was prescribed a cane, walker, and wheelchair by her primary care physician (Exhibit B9E, p. 7). However, documentation of these prescriptions was not found in the objective record and no care provider opined to the claimant having a medical need to use an assistive device. The only time the claimant was documented using a cane was when she arrived for the psychological consultative evaluation and the psychologist observed she exhibited "no significant or gross issues with gait, posture, or balance" (Exhibit B6F, p. 2). The medical evidence including observations by medical personnel does not establish that the claimant need[s] an ambulatory aid, nor that she used one. Based on the evidence, I find the claimant has no limitations in her ability to sit, stand, or walk throughout an eight-hour workday.

(R. 26.) Plaintiff contends that the lifting restriction is infirm because the ALJ said it was based on "available treatment evidence," but did not cite that evidence. What the ALJ actually said was there was *no* treatment evidence to support plaintiff's lifting allegations. (*Id.*) He cannot be faulted for failing to cite evidence that does not exist.

The same is true for the ALJ's conclusion that plaintiff has no limitations in her abilities to sit, stand, or walk. The ALJ based that conclusion on the fact that the record did not contain a prescription for a cane, walker, or wheelchair or an opinion from any of plaintiff's treaters that she needs to use an assistive device. (R. at 26.) Again, the ALJ cannot cite to evidence that does not exist.

Further, the ALJ's conclusion that there are no limitations on plaintiff's ability to sit or stand is also amply supported by the record. The ALJ found "the treatment evidence did not support the degree of limitation the claimant alleged." (R. 27.) The ALJ noted that there were no "examination findings of decreased strength, decreased muscle tone, abnormal reflexes, or abnormal sensation response in her lower extremities." (R. 20.) To the contrary, as it relates to plaintiff having no limitation in her ability to stand or walk, the ALJ specifically stated that treatment notes reflected "the claimant ambulated with steady gait." (R. 23), a finding supported

3

by the record. (R. 38, 788 (normal gait), 791 (same).) In short, there is no evidence to support plaintiff's own claim that she could not stand for ten minutes or sit for more than six or seven minutes. The ALJ's decision to discount plaintiff's claims was not error. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803 (7th Cir. 2005) (ALJ properly discounted subjective sitting limitation when medical evidence did not support claim).

Plaintiff also contends that the RFC's preclusion of climbing is unfounded because it is based on assumption, not evidence:

> When climbing, an individual generally reaches overhead and pulls up while at the same time using the lower extremities to step up or for support. Such activity would impose stress on the back and upper and lower extremities of a healthy individual. It is reasonable to assume that the stress of the claimant's weight on her knees could cause increased pain. To accommodate for this, she was provided a postural limitation that [s]he not climb ladders, ropes, or scaffolds. By the same reasoning, the claimant was limited to work that required no more than occasional climbing of ramps or stairs and to no more than occasional balancing, stooping, or crouching. To decrease the chance of increased knee pain, the claimant was precluded from work that required kneeling or crawling.

(R. 26.) Any error that may stem from the ALJ's assumption would be harmless, however, because the climbing limitation adopted by the ALJ was greater than that supported by the evidence. *See Shumaker v. Colvin*, 632 F. App'x 861, 867-68 (7th Cir. 2015) ("Shumaker does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ . . . . Thus, even if the ALJ had erred in considering how Shumaker's obesity affects her ability to work, that error would be harmless.")

Plaintiff further argues that the ALJ's rejection of the medical opinions left the RFC without support. "[I]t is well established that an ALJ must not substitute [his] own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). "That said, an ALJ's RFC assessment is not required to match the opinion of at least one physician of record. . . . Where the ALJ has rejected the medical

4

opinion evidence, the rest of the record must support [his] RFC assessment." *Andrea H. v. Kijakazi*, No. 20 CV 1828, 2023 WL 2403138, at *4 (N.D. Ill. Mar. 8, 2023) (citing *Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010)).

Such is the case here. The ALJ rejected the Agency doctors' medical opinions because both said plaintiff had not submitted sufficient evidence of impairment. (R. 114-15, 122-23.) The ALJ rejected the psychological consulting examiner's evaluation because the doctor concluded that plaintiff had "unspecified anxiety disorder, mild" but did not provide "a function-by-function analysis of how the documented findings would interfere with the claimant's ability to perform work." (R. 27; *see* R. 729-34 (consulting examiner's evaluation).) Finally, the ALJ rejected the Agency psychologists' opinions because the record evidence did not support the limitations they assessed. (R. 27.)

Nonetheless, the ALJ grounded the RFC in the record evidence. He said, for example, that: (1) plaintiff visited an immediate care facility in May 2023, said her knee was feeling better, and asked for a return-to-work note; (2) plaintiff appeared at the psychological exam using a cane, but the doctor said she exhibited "no significant or gross issues with gait, posture or balance;" (3) plaintiff said she had "profound knee swelling," but the medical evidence did not reflect it; (4) plaintiff denied having anxiety, there was not a record of her receiving regular mental health treatment, and her prescribed medications did not include any psychotropic drugs; and (5) the examining psychologist said plaintiff's "simple focus and attention was . . . intact and without evidence of any gross distractibility," and she had "[n]o significant short term memory loss" as she claimed. (*See* R. 21-25, 27.) Because the ALJ's RFC is grounded in evidence, his failure to model it on one of the medical opinions is not error. *See Michael B. v. Berryhill*, No. 18 C 236, 2019 WL 2269962, at *6 (N.D. Ill. May 28, 2019) ("The RFC is a legal – and not a medical – decision that

5

is exclusively within the ALJ's authority to make. . . . As such, the critical question is not whether the ALJ's RFC conclusions match a medical expert's opinion item-by-item but whether substantial evidence supports what the ALJ ultimately concluded about the claimant's RFC.").

Plaintiff also contends that the ALJ erred in accepting the vocational expert's ("VE's") testimony because it conflicted with the description of plaintiff's past relevant work in the Dictionary of Occupational Titles ("DOT"). The DOT describes plaintiff's past relevant work as follows:

> Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to workstation as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter.

DOT 222.687-022, *available at* https://occupationalinfo.org (last visited Feb. 7, 2025). That definition does not reference the possible use of hand or power tools. Moreover, though it references possible sorting of packages on a conveyor belt, plaintiff's past relevant work was "[to] scan[] the packages on the conveyor belt." (R. 56.)

In reality, plaintiff's quarrel is not with the contents of the DOT but the fact that the VE relied on it instead of the O*NET database. Though the SSA's use of the DOT has been criticized by the Seventh Circuit, *see, e.g., Ruenger v. Kijakazi*, 23 F.4th 760, 761-62 (7th Cir. 2022), SSA regulation and policy expressly contemplate use of the DOT in disability determinations. *See* 20 C.F.R. § 416.966(d)(1) ("[W]e will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of (1) Dictionary of Occupational Titles, published by the Department of Labor."); SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000) ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements

of work in the national economy."). Thus, the ALJ's reliance on VE's testimony, which was grounded in the DOT rather than O*NET, is not a basis for remand.

## Conclusion

For the reasons discussed above, the Court affirms the Commissioner's decision, grants the Commissioner's motion for summary judgment [ECF 15], denies plaintiff's motion for summary judgment [ECF 10], and terminates this case.

**SO ORDERED**                  **ENTERED: February 12, 2025**

**M. David Weisman**
**United States Magistrate Judge**